# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

VALJEAN PRIMEAUX,      )
     )
     Plaintiff,      )
     )
v.      )      **Case No. CIV-11-121-FHS-SPS**
     )
MICHAEL J. ASTRUE,      )
Commissioner of the Social      )
Security Administration,      )
     )
     Defendant.      )

## REPORT AND RECOMMENDATION

The claimant Valjean Primeaux requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on June 17, 1963, and was forty-five years old at the time of the administrative hearing. She has an eighth grade education and past relevant work as a painter, sales attendant, sorter, stock clerk, sewing inspector, motel manager, night auditor, front desk clerk, cashier, driver, and municipal worker (Tr. 24). The claimant alleges that she has been unable to work since October 15, 2005, because of an epidural abscess, spinal operation, chest cavity operation, and bipolar disorder (Tr. 58, 150).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on January 4, 2006. The Commissioner denied her applications. ALJ Jennie L. McLean held an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 6, 2009. The Appeals Council denied review, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a); 416.967(a) with the additional physical

limitations that she can only occasionally kneel, stoop, crawl, or crouch, cannot balance, and can occasionally climb stairs and ramps (Tr. 20). Further, the ALJ found that the claimant had the following limitations based on her mental impairments: i) simple repetitive job tasks; ii) cannot have public contact; and iii) cannot perform customer service (Tr. 20). While the ALJ concluded that the claimant was unable to return to her past relevant work, she found that there was work the claimant could perform in the national economy, *i. e.*, addresser and weight tester (Tr. 25). Thus, the ALJ concluded that the claimant was not disabled (Tr. 25).

## Review

The claimant contends that the ALJ erred: (i) by ignoring probative evidence related to the claimant's mental impairments; (ii) by failing to properly consider the opinion of state consultative examiner Dr. Ron Smallwood regarding claimant's mental impairments; and (iii) by failing to properly analyze the claimant's mental RFC. The undersigned Magistrate Judge agrees with the claimant's second contention.

On October 30, 2005, the claimant was admitted to the OU Medical Center and immediately taken to surgery for a spinal epidural abscess from C7-T10 (Tr. 199). She underwent irrigation and debridement of the abscess, a laminectomy of C2-3, T2-3, and T9-10, and a right thoracotomy and decortication (Tr. 199). She remained in the hospital for over a month following these procedures, and her discharge diagnoses including spinal epidural abscess from C7-T10, methicillin sensitive staph aureus bacteremia, and empyema (Tr. 199). During her stay at OU Medical Center, the claimant also underwent

a debridement of an intrathoracic abscess and resection of right upper lobe mass and a right subclavian triple lumen catheter was inserted (Tr. 202). On March 16, 2007, the claimant was seen at OU Medical Center again for chronic abdominal swelling.

State examining physician Dr. Paul M. Dichter, D.O. examined claimant on June 29, 2006 and completed a Social Security Disability Determination report (Tr. 232-37). Dr. Dichter wrote that the claimant gave a "long, very rambling and very unclear history" but reported that she was just beginning to be able to walk with minimal assistance after the procedure to drain her epidural abscess (Tr. 232). The claimant was noted to be "quite anxious and tearful during [the] interview" and her gait without a cane was noted to be slow, steady, stable, and secure (Tr. 233). The claimant complained of generalized fatigue, paresthesias in her feet and arms, and a general lack of strength (Tr. 232).

State examining physician Dr. Lawrence K. Kaczmarek, M.D. conducted a psychiatric evaluation of the claimant on August 5, 2006 (Tr. 239-41). The claimant reported that she had completed twelve-plus years of education (even though she testified at the administrative hearing that she had completed only through the eighth grade) and that she was unable to stand without assistance (Tr. 239). The claimant also reported that her primary care physicians had offered her antidepressant medications in the past, but that she "categorically refused preferring to use introspection and prayer" (Tr. 239). Dr. Kaczmarek wrote that claimant presented in a "fairly dramatic and gearless fashion," was "disposed to ramble with both detail and interpretative statements," and had "an underlying pressuring and pressured intensity of her affect with fairly poor eye contact

and a seeming dramatic portrayal of her self (sic) and conditions" (Tr. 240). She was diagnosed at that time with dysthymic disorder, history of polysubstance abuse, and personality disorder with histrionic features (Tr. 241). Dr. Kaczmarek noted that in order to determine the degree of her thought disorder and severity of her mood disorder and personality type, the claimant probably needed a complete psychiatric assessment and psychological testing (Tr. 241).

On October 18, 2006, state examining physician Dr. Martin Krimsky, Ph.D. interviewed the client and completed a mental status examination (Tr. 244-47). The claimant reported two previous marriages, with the first marriage ending in divorce and the second ending with the death of her spouse (Tr. 244). She again reported completing high school and some college courses (Tr. 244). Dr. Krimsky noted that the claimant was "under marked pressure to talk" from the moment she sat down (Tr. 244). Dr. Krimsky agreed with the claimant's description of herself as bipolar, and noted that the claimant was "personable and responds with a certain amount of charm but without ordinary inhibition" (Tr. 244). The claimant's memory was described as erratic, and Dr. Krimsky noted that claimant "interpolates memory gaps with details of her own invention" (Tr. 245). The claimant was noted to have "difficulty in the consistent application of the abstract level of thinking" (Tr. 245). Dr. Krimsky diagnosed claimant with bipolar disorder without psychosis (Tr. 245).

The claimant argues that the ALJ erred in his assessment of claimant's mental RFC because she inexplicably omitted the limitation contained in state reviewing

physician Dr. Ron Smallwood's opinion that claimant could relate to coworkers and supervisors on a superficial basis. The Court agrees. With regard to Dr. Smallwood's opinion, the ALJ mentioned Dr. Smallwood's finding that claimant was capable of relating to supervisors and peers on a superficial work basis but stated that his RFC finding was consistent with Dr. Smallwood's opinions (Tr. 23). There are two problems with the ALJ's findings. First, there exists an internal inconsistency within the ALJ's opinion that is left unexplained. Despite the ALJ's proclamation that Dr. Smallwood's opinion that claimant was capable of relating to supervisors and peers on a superficial work basis were included in his RFC findings, the ALJ actually provided no such limitation in his RFC findings. *See, e. g.*, *Ramirez v. Astrue*, 255 Fed. Appx. 327, 332 (10th Cir. 2007) ("'[T]he RFC assessment must always consider and address medical source opinions. *If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted*.'") [unpublished opinion], *quoting* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at * 7 [emphasis added]. Second, the ALJ failed to include any limitation in this regard in his hypothetical questions posed to the VE during questioning at the administrative hearing (Tr. 67-74). "'[T]estimony elicited by hypothetical questions that do not relate with precision all of claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.'" *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) *quoting Ekeland v. Bowen*, 899 F.2d 719, 724 (8th Cir. 1990). Thus, because the ALJ failed to include a limitation for

relating to supervisors and peers, the VE's testimony cannot constitute substantial evidence to support her findings at step five.

Because the ALJ provided no explanation for failing to include Dr. Smallwood's opinion that claimant was capable of relating to supervisors and peers on a superficial basis and failed to include such a limitation in his hypothetical questioning of the VE, the undersigned Magistrate Judge concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper explanation regarding Dr. Smallwood's opinion. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied and the decision of the Commissioner is therefore not supported by substantial evidence, and accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED to the ALJ for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 12th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma